Ruffin, C. J.
 

 The point is, whether this is a case within the Act of 1823,
 
 Rev. St. ch.
 
 31,
 
 sec.
 
 51. It provides, that the tenant in possession shall not be entitled to plead f unless he give a bond as required in this case, but that there, shall be judgment against the casual ejector, if the lessor of the plaintiff’shall file an affidavit at the first term, that the tenant in possession entered into the premises as his tenant, and that his term therein has expired, and that the tenant refuses to surrender the possession of the premises to the lessor of the plaintiff', with the privilege to the tenant of offering counter affidavits.
 

 One question on the Act is, whether the acceptance of a lease by one already in possession is within it: as if the owner of land sell it, and, without going out of possessiont takes a lease from his vendee : or if a tenant under one person takes a new lease from the assignee of the reversion. Literally, the Act is confined to the case, in which the entry was at first under the lessor of the plaintiff. No doubt, the reason is, that each of those persons has a precise knowledge of the contract, thus made by himself personally; so that neither can be under a mistake as to his rights or those of the other party. Therefore holding over against the demand of the lessor must be in bad faith on the part of the tenant, and he ought not to hinder the land-lord’s remedy to regain the possession without securing the rent, damages for waste and costs. Though that principle may not, more than the letter of the act take in the case of an assignment of the reversion, yet when one, though before in as owner or as lessee of another, takes a lease from his alienee or a new lease from the assignee of the reversion, it seems substantially to fall so entirely within the mischief, against which the act is directed, as to be within its fair construction. For it
 
 *230
 
 would be very idle, that the tenant should
 
 go
 
 out for an instant, and then return, for the sake of creating such a tenancy as would, under the act, tend to prevent the tenant from holding over. The Court, therefore, inclines strongly to the opinion, that the bond might have been required from Long, notwithstanding he did not go into possession under a lease from Phelps, but onty continued in possession under a lease granted by him after ho became owner of the land. Yet the points need not be now adjudged, as it is not necessary to the decision of this case, in as much as the Court holds the affidavit insufficient by reason of defects in other essential points.
 

 The act does not give this security to a landlord, when the tenant merely holds on, but only when he refuses to surrender the premises to the lessor after his term there• in expired. The lessor of the plaintiff must therefore establish the two further facts, that, the term has expired, and that still the tenant refuses to deliver up the possession. The affidavit here contains no such statement in either respect. Perhaps it ought to be required to say so in terms. At all events, the statements in it should he such, that the Court would be obliged to infer those facts by a fair, if not a necessary, construction. For the Court ought not to require a bond to secure the rent and damages in any case, in which the jury would be unable, upon evidence to the same facts,to give them, according to the subsequent provisions of the act. Those provisions are, that in such casesthe jury shallenquire.whetherthe defendant refused to surrender the premises after his term therein had expired, and, if they find affirmatively on those points, then they are to assess the. damages, including the value of the occupation from the expiration of the term and damages for waste during the holding over ; for which there is to be a summary judgment given on the bond. Very clearly, then, those facts ought distinctly and affirmatively to appear on the affidavit. Here they do
 
 *231
 
 not; nor can they be reasonably implied. Certainly, holding over merely will not amount to a refusal to surrender the premises ; for the assent of the landlord may be presumed, unless the contrary appear. There must be an express refusal, or a demand of possession, or something else that will turn the tenant into a trespasser. According to the words of the Act, the jury must find that the party
 
 "refused
 
 to surrender the premises
 
 after
 
 his terra expired which would seem to'imply a demand and refusal at the expiration of the term, or so soon afterwards as to rebut an implication of the acquiescence of the landlord. And this must certainly be so, when lhe term is for a definite period, and, therefore, no notice is necessary to determine the tenancy ; for in such a ease, if possession be not. demanded at the end of the term, or. an explicit declaration made before hand to the tenant, that the landlord will require him to go out at the expiration of the term, there will be nothing to give to the holding over the character of a refusal on the part of the tenant to restore the possession, but by such holding over he becomes tenant from year to year. It may be admitted, that, if the lease here were definitely for the year 1843, the notice to quit, given in August, might be a sufficient demand of the possession at the end of thal3ear, so as to be evidence, that the subsequent holding over amounted to a refusal of the demand. But that is not the nature of the lease, as stated in the affidavit. It is explicit only in setting forth a letting in 1839 at an annual rent of of $25 ; and that under it the defendant occupied until 1843, giving notes in 1839, 1840, 1341, and 1842, respectively fora year's rent, and subsequently paying them. It does not specify at what period of the year the contract was made; nor any definite term, either as to its beginning or ending. Then, it was plainly a tenancy from year to year ; but from what day the year was to be reckoned, no one can say upon the face of the affidavit. Now, if it be admitted, that, in a tenancy
 
 *232
 
 from yo-ar to year, there need be no demand of the possession distinct from the notice to quit, and so we suppose the law to be ; yet clearly, we think, that efFect can only' be allowed to such a notice as is valid and effectual to determine the tenancy. Here the notice was given sometime in August 1843 ; and it is impossible to say that it was due notice. It has not been directly decided in this State, as far as we are aware, whatis the proper notice ; and it may be possible, that less than the half year, required in England, may be deemed reasonable, or that different periods may'be adopted according to the situation of the premises, the interests of agriculture, or the seasons at which the terms may expire. The Court gives no opinion on those points, farther than to say, that it is at least, prudent to be on the safe side by giving a half year’s notice. But there must, at all events, be some reasonable notice in such cases from the landlord to the tenant, or
 
 vice versa,
 
 to prevent mutual disappointment and loss. Now as it does not appear on what day in August 1813 the notice was given, nor when the current year would be out — that is, at the end of 1843, or at an earlier or later day — it is impossible to determine, whether the notice was for half a year or any other period in particular. Consequently the Court could not determine, that it was reasonable, so as to put an end to the tenancy or convert the lessee into a trespasser, and make his continuing in possession until February 10th, 1844. evidence of a refusal to surrender the premises after his term had expired. It is to avoid the danger of the Court’s acting upon vague conjectures on those points, that the Act requires that the lessor of the plaintiff shall swear distinctly, that the term had expired, and that after such expiration the tenant refused to deliver up the possession. Nothing less ought to be deemed sufficient, to preclude the person in possession from the common right of defence. The tenant might have held over upon a
 
 *233
 
 fair claim of right, on the ground, that the notice was not such as made it binding on him to go out; whereas the case within the purview of the Act is that of a wilful wrong by the tenant, in withholding from the landlord his land, after a lawful demand of the possession.
 

 It was suggested at the bar, that Long could not appeal, as he had not been admitted to defend, and, therefore^ was not a party to the record. But the Court holds otherwise. It may be true, if the tenant does not appear, and apply to be admitted as defendant, that he cannot bring error or have an appeal; which are rights belonging to parties and privies. But even in that case the tenant’s rights are noticed so far that, upon his subsequent application, the judgment against the casual' ejector will be set aside for irregularity, and a writ of restitution awarded. But when he appears, it is oí common right he should be admitted to defend upon the usual terms ; and if that be refused to him, undoubtedly, it is an error, which he may have corrected by a higher Court. So it is here ; for, although the Statute authorises the imposition of other terms in certain cases; this is not one of them ; and theréfore the tenant had a right to be heard before being deprived of his possession, and to be heard upon giving bail and entering into the common rule, according to the course of the Court.
 

 The judgment against the casual ejector was, therefore, erroneous, and is reversed; and the case is remitted to the Superior Court to proceed farther therein according to law and right.
 

 Pee Cukiam. - Ordered accordingly.